UNITED STATES DISTRICT COURT OF THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
NEEL ELSHERIF,                                    Case No.:   1:25-cv-1597
                              Plaintiff,

                    v.                                    **COMPLAINT AND DEMAND**
                                                              **FOR JURY TRIAL**

AMERICAN AIRLINES, INC.,

                              Defendants.
-------------------------------------------------------X


     Plaintiff, Neel Elsherif ("Plaintiff"), by and through her attorneys, Adelman Matz P.C., as

and for her complaint against American Airlines, Inc. ("Defendant" or "American Airlines")

alleges as follows:

## <u>INTRODUCTION</u>

     1.    Plaintiff, a female passenger of Arab and Middle Eastern descent, suffered a

disturbing and traumatic experience aboard an American Airlines flight from New York to Milan

when the intoxicated, caucasian male passenger seated next to her brazenly masturbated for

approximately sixty (60) minutes during the flight. When Plaintiff sought protection from

Defendant's staff, she was not met with concern or action, but instead with a shocking dismissal:

the flight attendant employed by Defendant responded to Plaintiff's report by stating, "men just

do stuff like that", referring to masturbation, and that the flight attendant's husband did "stuff like

that", implying that, as a woman, Plaintiff was expected to endure such grotesque misconduct, and

reinforcing the pernicious and unlawful stereotype that women must tolerate male predation as a

fact of life.

     2.    Defendant not only failed to protect Plaintiff from an obvious and egregious act of

sexual misconduct by overserving the male passenger and failing to properly monitor the cabin

1

where Plaintiff was seated, but also compounded Plaintiff's trauma through its employees' dismissive and discriminatory response to Plaintiff's report: Instead of intervening and ensuring Plaintiff's safety and well-being, Defendant's employees refused to ask the white male passenger to move his seat so that Plaintiff could remain in the seat that she purchased without undergoing further harm, failed to report him to the authorities or even speak to him about the assault, and ultimately treated Plaintiff's suffering as unworthy of redress because the male passenger is white, and Plaintiff is not.

3.    As a direct result of Defendant's gross negligence, intentional and/or negligent infliction of emotional distress, breach of contract and race/national origin-based discrimination, Plaintiff has suffered severe and lasting emotional harm. Plaintiff has endured severe anxiety, fear of flying, and emotional trauma, all exacerbated by the knowledge that Defendant—an entity entrusted with passenger safety that holds itself out to be "caring for people on life's journey"—utterly failed to uphold its duty.

4.    The Plaintiff's experience is not an isolated incident. American Airlines has a well-documented history of giving white passengers favorable treatment to people of color and failing to protect its female passengers from sexual harassment and assault, particularly on long-haul flights where the cabin is dark, the female victim is in the window seat, seated next to a male stranger who was being served copious amounts of alcohol by the flight attendant. Further, despite this known risk, Defendant failed to implement or enforce policies to prevent or adequately respond to Plaintiff's report of sexual misconduct by the male passenger, thereby fostering an environment where such abuse and discrimination is tolerated, and white perpetrators face no consequences.

5. For these reasons, Plaintiff brings claims against Defendant for negligence, gross negligence, intentional infliction of emotional distress, breach of contract and discrimination in violation of federal law, and she seeks compensatory and punitive damages to hold Defendant accountable for its egregious misconduct.

## NATURE OF THE PARTIES

6. Plaintiff is a natural person currently residing in the State of New York.

7. Upon information and belief, Defendant is a corporation duly formed and existing under the laws of the State of Texas with a principal place of business located in Fort Worth, Texas.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over the subject matter of this action pursuant to 23 U.S.C. §§ 1331 and 1338(a) because this action alleges violations of federal statutes.

9. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over this action because, as stated above, this Court properly has federal question jurisdiction and because all other claims are so related within this Court's original jurisdiction that they form part of the same case or controversy.

10. Upon information and belief, this Court has personal jurisdiction over the Defendant pursuant to NY CPLR § 302 because Defendant has purposefully availed itself of transacting business within the State of New York through operating commercial flights from its terminal at John F. Kennedy International Airport ("JFK"), which is located in the State of New York and, specifically, Queens, New York.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because the Defendant is subject to the Court's personal jurisdiction with respect to the action, as Defendant transacts business in Queens, New York.

## FACTUAL ALLEGATIONS

12.     Plaintiff is a female entrepreneur of Arab and Middle Eastern descent, who is the founder and CEO of multiple companies including Nile Hudson, a company focused on bridging the gap between US brands and overseas manufacturers, GuardeX New York, which began as an effort to donate much-needed supplies during the pandemic, and Mela, a luxury vegan leather brand.

13.     Plaintiff frequently travels internationally for work, as one of her companies has offices based in Europe and many of her partners are located around the globe; accordingly, travel is a crucial aspect of Plaintiff's livelihood.

14.     Plaintiff also travels frequently to visit her family members who live in Egypt.

15.     Upon information and belief, Defendant employs a flight crew tasked with ensuring the safe and secure operation of their flights, as well as the safety and well-being of their passengers.

16.     On May 22, 2024, Plaintiff purchased a Premium Economy ticket from Defendant for American Airlines Flight No. AA 198 from JFK Airport to Milan, scheduled for May 27, 2024 (the "Flight"), for over three thousand dollars ($3,000) (the "Contract").

17.     Plaintiff purchased a Premium Economy ticket for the Flight to ensure she could sleep comfortably while traveling for work, as she had a business meeting immediately upon arrival in Milan.

18.     Included on the Contract was a "NOTICE OF INCORPORATED TERMS OF CONTRACT", wherein it stated that air transportation on Defendant's airline is subject to Defendant's conditions of carriage.

19.     The incorporated terms of the Contract state that Defendant values "every customer" and is "dedicated to making every flight memorable, with your safety, comfort and convenience always our top priorities."

20.     The incorporated terms of the Contract also state that Defendant has "devoted resources to the front line and rely on [Defendant's] personnel to solve most [customer] issues throughout the travel journey".

21.     On May 27, 2024, Plaintiff boarded the Flight and sat in window seat 15C ("Plaintiff's Seat"), which was located in the Premium Economy cabin of the airplane.

22.     Upon boarding the Flight and arriving at her Seat, Plaintiff was greeted by a white female flight attendant who, upon information and belief, was assigned to the Priority Economy cabin (the "Flight Attendant").

23.     Seated in the aisle seat next to Plaintiff was a white male passenger whose name is unknown ("John Doe").

24.     Upon information and belief, the Flight Attendant knew that Plaintiff and John Doe were not traveling together, because the Flight Attendant had seen Plaintiff arrive separately from John Doe.

25.     Before and during the in-flight meal service, which began approximately one (1) hour after departure, Plaintiff observed the Flight Attendant serving John Doe multiple glasses of champagne.

26.     Upon information and belief, John Doe became visibly intoxicated after receiving multiple glasses of champagne from the Flight Attendant.

27.     Following the in-flight meal service, the lights in the cabin dimmed, and Plaintiff began preparing to go to sleep for the remainder of the Flight.

28.     Before Plaintiff fell asleep, she noticed John Doe was holding his groin and rubbing his genitals over his pants; when this rubbing did not stop, but instead intensified, Plaintiff realized that John Doe was masturbating next to her.

29.     Stunned, Plaintiff froze in her seat and began to panic; she felt extremely uncomfortable and helpless.

30.     Plaintiff sat in her seat with her eyes forward, hoping that the Flight Attendant or another AA personnel member would walk by and see what was happening, or Plaintiff could try and get their attention.

31.     John Doe continued to masturbate next to Plaintiff for approximately sixty (60) minutes, and during that time neither the Flight Attendant nor another AA crew member walked through the Premium Economy cabin.

32.     Throughout the assault, Plaintiff was in fear, panicking silently, and did not know what to do; she feared that John Doe may attempt to touch her if she closed her eyes or pretended to be asleep.

33.     Upon information and belief, the Flight Attendant knew or should have known Plaintiff may be at risk of a sexual assault and to keep a closer watch on the cabin, given that there have been prior incidents of in-flight sexual assaults on Defendant's flights under similar circumstances, i.e., where the Flight Attendant had been serving John Doe numerous glasses of champagne, Plaintiff was in a window seat, the cabin was dark, it was a long-haul flight, and the Flight Attendant was aware that Plaintiff and John Doe were not traveling together.

34.     Indeed, upon information and belief, there have been numerous other complaints filed against Defendant, one as recent as May of 2024, for in-flight sexual assaults against its female passengers in similar circumstances, with similar allegations that Defendant failed to

intervene and/or protect the safety and well-being of its female passengers both before and after reports of sexual assault during flights.[1]

35. Upon information and belief, despite this known risk, Defendant failed to implement or enforce policies to prevent or intervene to stop the inappropriate behavior Plaintiff was made subject to during the Flight, including but not limited to, having a personnel member walk through the Premier Economy cabin at least one (1) time in a sixty (60) minute period.

36. When John Doe eventually stopped masturbating and Plaintiff was able to get out of her seat, Plaintiff immediately sought protection from Defendant's staff and disclosed to the Flight Attendant what had happened.

37. In response, Plaintiff was not met with concern or action, but instead with a shocking dismissal: the Flight Attendant stated that there was "nothing really that [she] can do" except move Plaintiff's seat to a different seat in coach, and the Flight Attendant dismissed the assault as normal behavior that women were meant to endure, stating that "men just do stuff like that", referring to masturbation, and that her (the Flight Attendant's) husband did "stuff like that".

38. Upon information and belief, because Plaintiff is an Arab woman, the Flight Attendant did not treat Plaintiff's report of John Doe masturbating next to her as a sexual assault.

39. The Flight Attendant dismissed Plaintiff's complaint about John Doe as an overreaction.

40. When Plaintiff, who was visibly distressed, requested that John Doe's seat be relocated, given that she was the victim who had not consented to the assault, and because she had paid thousands of dollars for her Seat in Premium Economy, the Flight Attendant outright refused to ask John Doe if he would be willing to switch his seat instead of Plaintiff.

---

[1] *See, e.g.*, *Morgan v. American Airlines Group Incorporated et al*, Case No. 2:24-cv-02026; *Aubrey Lane and Jesse Lane v. American Airlines, Inc.*, Case No. 1:18-cv-06110.

41.     Upon information and belief, the Flight Attendant gave John Doe preferential treatment over Plaintiff, and treated John Doe's safety, comfort and convenience more importantly than Plaintiff's, because John Doe is a white male.

42.     Upon information and belief, the Flight Attendant also failed to investigate Plaintiff's report of the assault during the Flight.

43.     The Flight Attendant entirely failed to acknowledge John Doe as a threat or acknowledge the severity of the problem.

44.     Upon information and belief, the Flight Attendant failed to report John Doe to Defendant or law enforcement.

45.     The Flight Attendant never asked Plaintiff if she wished to contact the authorities, report the incident or take further action, nor did the Flight Attendant tell the Plaintiff she had the right to do so.

46.     Plaintiff, who was visibly in distress, had no choice but to give up her Seat and move to seat 28H, which was located in the coach cabin of the airplane.

47.     Throughout the rest of the Flight, Plaintiff feared that John Doe would retaliate against her for reporting him to the Flight Attendant.

48.     It was not until later in the Flight that Plaintiff observed the Flight Attendant continuing to serve John Doe champagne and engaging in jovial, friendly interactions with John Doe.

49.     Upon information and belief, it was never disclosed to John Doe that his inappropriate behavior had been reported; when Plaintiff realized this fact, Plaintiff felt even more humiliated and ashamed.

50.     Plaintiff could not sleep for the remainder of the Flight, and she was so upset by the assault and the Flight Attendant's actions following the assault that she could not make it to her work meeting when she landed in Milan.

51.     Upon information and belief, the Flight Attendant knew or should have known that dismissing the sexual assault of Plaintiff as normal behavior would cause further emotional distress to Plaintiff.

52.     Upon information and belief, because Plaintiff was an Arab woman, the Flight Attendant failed to take any action to prevent any further emotional harm to Plaintiff in favor of John Doe's comfort.

53.     Upon information and belief, the Flight Attendant intended to make Plaintiff feel ashamed and embarrassed for reporting John Doe's assault, as if Plaintiff was the one who had done something wrong.

54.     Plaintiff suffered severe emotional distress as a result of the assault.

55.     Plaintiff suffered severe emotional distress as a result of the Flight Attendant's dismissive response to Plaintiff's report of the assault.

56.     Plaintiff experienced and continues to experience serious emotional distress, including but not limited to depression, anxiety and fear when having to fly, which she needs to do frequently for work and to see her family, and feelings of shame and humiliation due to John Doe's inappropriate misconduct and the Flight Attendant's dismissal of same.

57.     At all relevant times, the Flight Attendant was acting within the scope of her employment with Defendant.

58.     Defendant is responsible for harm caused by acts of its employees for conduct that was within the scope of their employment.

59.     Upon information and belief, the Flight Attendant failed to report John Doe to Defendant or law enforcement.

60.     Upon arrival in Milan, Plaintiff reported the incident in person to the Defendant's office at the Milan Malpensa Airport, and the Defendant's personnel she spoke to there, who was in a managerial role, shrugged and told Plaintiff to "call the 1-800 number".

61.     When Plaintiff eventually returned back to JFK from Milan, she again reported the incident in person to the Defendant's office at JFK, and the Defendant's managerial staff there also disregarded John Doe and the Flight Attendant's harmful behaviors and told Plaintiff to call the 1-800 number.

62.     Upon information and belief, neither Defendant's personnel in Milan nor JFK reported John Doe or the Flight Attendant to Defendant or law enforcement.

63.     On or around May 28, 2025, Plaintiff called Defendant's 1-800 number, and Defendant's customer service representative framed the sexual assault as a mere "inconvenience", and told Plaintiff she would receive a call back regarding her complaint.

64.     It was not until July 14, 2025—months after the assault occurred—that Defendant told Plaintiff that its Security Operations was asked to "review the details provided and address them internally regarding the other passenger".

65.     Upon information and belief, the Flight Attendant's discriminatory behavior was never reported to Defendant for investigation.

66.     Upon information and belief, Defendant never reported the assault to law enforcement.

67.     Defendant never provided Plaintiff with the name of the male passenger so that Plaintiff could report the incident to law enforcement.

68. Upon information and belief, if Plaintiff was white, she would not have received this harmful and discriminatory treatment by Defendant, because in other cases where white American Airlines passengers suffered in-flight sexual assault and/or violence, Defendant reported the incident to authorities during the flight so the authorities could address the situation in-air or upon landing.

69. Plaintiff reasonably believed based on the terms of the Contract that Defendant would prioritize her safety, comfort and well-being, both during and after the Flight.

70. Not only did Defendant fail to uphold its obligations under the Contract, but Defendant also left Plaintiff with no meaningful recourse for the assault, feeling profoundly degraded and humiliated by the dismissive attitude of every single employee of Defendant she encountered.

71. Defendant's handling of Plaintiff's complaint not only failed to address the gravity of the situation but compounded her distress, leaving her emotionally and mentally shattered.

72. Plaintiff has not been able to take an overnight flight since May of 2024, including canceling several work trips and trips to visit family, due to the severe mental and emotional harm that she has suffered as a result of the foregoing.

**FIRST CAUSE OF ACTION**
**(DISCRIMINATION BASED ON RACE/COLOR/NATIONAL ORIGIN PURSUANT TO**
**42 U.S.C. § 1981)**

73. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

74. A valid and binding Contract exists between Plaintiff and Defendant.

75. Pursuant to the terms of the Contract, Plaintiff was entitled to have a safe flight to Milan in the Seat that she purchased as stated in the Contract.

76.     Upon information and belief, but for Plaintiff's race, the Flight Attendant would not have disregarded Plaintiff's complaint about John Doe and would not have given John Doe special treatment over Plaintiff.

77.     Upon information and belief, but for Plaintiff's race, the Flight Attendant would have admonished John Doe for the sexual assault, or at the very least asked John Doe about the assault, but the Flight Attendant refused to do so.

78.     Upon information and belief, because Plaintiff is an Arab woman, the Flight Attendant did not treat Plaintiff's report of John Doe masturbating next to her as a sexual assault.

79.     Upon information and belief, the Flight Attendant refused to ask John Doe to change his seat and gave John Doe preferential treatment over Plaintiff, and treated John Doe's safety, comfort and convenience more importantly than Plaintiff's, because John Doe is a white male.

80.     Upon information and belief, Defendant's racial discrimination against Plaintiff impaired the contractual relationship between Plaintiff and Defendant in that it required Plaintiff to either move to a different seat than the one she paid for, or to face the threat of being assaulted again by John Doe in her Seat, which impaired Plaintiff's right to enforce the Contract.

81.     Defendant denied Plaintiff the same right to receive benefits under the Contract that it affords to Caucasian passengers as described herein.

82.     Upon information and belief, Defendant intended to discriminate against Plaintiff based on her race, color and/or national origin.

83.     Upon information and belief, but for Plaintiff's race, she would not have suffered the loss of her legally protected right to enjoy the benefits of the Contract.

84.     Upon information and belief, in addition, Plaintiff was humiliated and disturbed by Defendant's discriminatory acts, which were committed with malice and reckless indifference to Plaintiff's legally protected right to be free from discrimination based on her race.

85.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages and is entitled to the recovery of damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (NEGLIGENCE)

86.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

87.     Defendant is a "common carrier" under New York State law.

88.     As a common carrier, Defendant owed a duty of care to protect its passenger's safety and well-being.

89.     This duty required Defendant and its employees to exercise the greatest degree of care and foresight possible to ensure Plaintiff's safety from other passengers aboard the Flight.

90.     Upon information and belief, the reason flight attendants are positioned throughout the cabin is to protect the safety of the passengers.

91.     Upon information and belief, Defendant knew or should have known that Plaintiff was at risk of a sexual assault and to keep a closer watch on the cabin, given that there have been prior incidents of in-flight sexual assaults on Defendant's flights under similar circumstances, i.e., where the Flight Attendant had been serving John Doe numerous glasses of champagne, Plaintiff was in a window seat, the cabin was dark, it was a long-haul flight, and the Flight Attendant was aware that Plaintiff and John Doe were not traveling together.

92. Although Defendant knew or should have known the dangers of in-air sexual assault against woman during long-haul flights generally, especially by male passengers who are drinking alcohol, the Defendant failed to recognize the danger John Doe posed to Plaintiff and the Defendant failed to monitor the Premier Economy cabin for approximately sixty (60) minutes, during which time Plaintiff was the victim of a sexual assault.

93. Upon information and belief, Defendant knew or should have known that a passenger could be injured if the cabins are not adequately supervised, yet there was no flight attendant present in the cabin for approximately sixty (60) minutes.

94. Defendant's failure to monitor the cabin for approximately sixty (60) minutes under such circumstances was a breach of Defendant's duty of care owed to Plaintiff.

95. As a direct and proximate cause of Defendant's negligence, Plaintiff was harmed.

96. The harm that Plaintiff suffered was a foreseeable and probable consequence of Defendant's failure to properly supervise the cabin during the flight.

97. Plaintiff suffered severe emotional distress as a result of the Flight Attendant's failure to take any action after being informed of the Assault.

98. Defendant's airline personnel were negligent in the performance of their duties during the Flight.

99. Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages and is entitled to the recovery of damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (GROSS NEGLIGENCE)

100. Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

101. The Defendant failed to exercise reasonable care after learning of the assault to curtail any further harm to Plaintiff.

102. After Plaintiff reported John Doe's inappropriate conduct, the Defendant dismissed it as normal behavior that women were meant to endure, in that the Flight Attendant stated that "men just do stuff like that", referring to masturbation.

103. It was not until later in the Flight, after having moved her seat that Plaintiff observed the Flight Attendant continuing to serve John Doe champagne and engaging in jovial, friendly interactions with John Doe.

104. Upon information and belief, it was never disclosed to John Doe that his inappropriate behavior had been reported; when Plaintiff realized this, Plaintiff felt even more humiliated and ashamed.

105. The Flight Attendant entirely failed to acknowledge John Doe as a threat or acknowledge the severity of the problem.

106. The Defendant failed to investigate Plaintiff's report of the assault during the Flight.

107. The Defendant failed to ask Plaintiff if she wished to contact the authorities, report the incident or take further action.

108. Upon information and belief, the Flight Attendant failed to report John Doe to Defendant or law enforcement.

109. Defendant's response to Plaintiff's report about John Doe's behavior demonstrates a complete disregard for Plaintiff's safety, well-being and rights.

110. Plaintiff suffered severe emotional distress as a result of the Defendant's response to Plaintiff's report of the assault.

111.    Upon information and belief, Defendant knew or should have known that dismissing the sexual assault of Plaintiff as normal behavior would cause further emotional distress to Plaintiff.

112.    The Defendant's failure to appropriately address the inappropriate conduct was grossly negligent.

113.    The harm caused by this breach, including emotional distress and fear, was foreseeable.

114.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages and is entitled to the recovery of damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### (NEGLIGENT HIRING, TRAINING, AND/OR SUPERVISION)

115.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

116.    As a common carrier, Defendant owed a duty of care to protect its passenger's safety and well-being.

117.    This duty required Defendant and its employees to exercise the greatest degree of care and foresight possible to ensure Plaintiff's safety from other passengers aboard the Flight.

118.    Upon information and belief, the Flight Attendant knew or should have known Plaintiff may be at risk of a sexual assault and to keep a closer watch on the cabin, given that there have been prior incidents of in-flight sexual assaults on Defendant's flights under similar circumstances, i.e., where the Flight Attendant had been serving John Doe numerous glasses of champagne, Plaintiff was in a window seat, the cabin was dark, it was a long-haul flight, and the Flight Attendant was aware that Plaintiff and John Doe were not traveling together.

119.     Indeed, upon information and belief, there have been numerous other complaints filed against Defendant, one as recent as May of 2024, for in-flight sexual assaults against its female passengers in similar circumstances, with similar allegations that Defendant failed to intervene and/or protect the safety and well-being of its female passengers both before and after reports of sexual assault during flights.

120.     Upon information and belief, despite this known risk, Defendant failed to implement or enforce policies to prevent or intervene to stop the inappropriate behavior Plaintiff was made subject to during the Flight, including but not limited to, having a personnel member walk through the Premier Economy cabin at least one (1) time in a sixty (60) minute period.

121.     Defendant failed to use reasonable care in the management, control and/or training of its employees on the Flight.

122.     Defendant's airline personnel were negligent in the performance of their duties during the Flight.

123.     Defendant failed to adequately train its employees to properly monitor the cabins and passengers while in-flight.

124.     Defendant failed to adequately train its employees to treat all customers equally.

125.     Defendant failed to adequately train its employees to report incidents of in-flight sexual assault to Defendant and/or the authorities.

126.     Defendant failed to adequately train its employees to properly respond to passenger complaints of sexual assault.

127.     Defendant failed to exercise reasonable care after learning of the assault to curtail any further harm to Plaintiff.

128.     Plaintiff suffered severe emotional distress as a result of the Defendant's response to Plaintiff's report of the assault.

129.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages and is entitled to the recovery of damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

130.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

131.     Upon information and belief, Defendant's response to Plaintiff's distressing situation—dismissing John Doe's inappropriate behavior as normal and failing to acknowledge John Doe as a threat or acknowledge the severity of the problem, and refusing to ask John Doe to change his seat—was extreme and outrageous.

132.     After the assault, Plaintiff sought safety and protection from Defendant, but was met instead with discrimination based on her race, as well as hostility and belittling remarks, implying that as a woman, she must tolerate male strangers masturbating in front of her on airplanes.

133.     Upon information and belief, the Flight Attendant intended to make Plaintiff feel ashamed and embarrassed for reporting John Doe's assault, as if Plaintiff was the one who had done something wrong.

134.     Defendant's response to Plaintiff's report about John Doe's behavior demonstrates a complete disregard for Plaintiff's emotional well-being.

135.     Upon information and belief, Defendant knew or should have known that dismissing Plaintiff's sexual assault as normal behavior and prioritizing John Doe's comfort over

Plaintiff's by neglecting to address the report created a significant risk of causing severe emotional distress to Plaintiff.

136.     Plaintiff suffered severe emotional distress as a result of Defendant's response to Plaintiff's report of the assault.

137.     Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages and is entitled to the recovery of damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

138.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

139.     Upon information and belief, the reason flight attendants are positioned throughout the cabin is to protect the safety of the passengers.

140.     Upon information and belief, Defendant knew or should have known that Plaintiff was at risk of a sexual assault and to keep a closer watch on the cabin, given that there have been prior incidents of in-flight sexual assaults on Defendant's flights under similar circumstances, i.e., where the Flight Attendant had been serving John Doe numerous glasses of champagne, Plaintiff was in a window seat, the cabin was dark, it was a long-haul flight, and the Flight Attendant was aware that Plaintiff and John Doe were not traveling together.

141.     Although Defendant knew or should have known the dangers of in-air sexual assault against woman during long-haul flights generally, especially by male passengers who are drinking alcohol, the Defendant failed to recognize the danger John Doe posed to Plaintiff and the Defendant failed to monitor the Premier Economy cabin for approximately sixty (60) minutes, during which time Plaintiff was the victim of a sexual assault.

142.     Upon information and belief, Defendant knew or should have known that a passenger could be injured if the cabins are not adequately supervised, yet there was no flight attendant present in the cabin for approximately sixty (60) minutes.

143.     <u>As a direct and proximate cause of Defendant's negligence, Plaintiff's physical and emotional well-being was threatened, and ultimately Plaintiff suffered the harm that Defendant's negligence put her at risk of.</u>

144.     Upon information and belief, Defendant's response to Plaintiff's distressing situation—dismissing John Doe's inappropriate behavior as normal and failing to acknowledge John Doe as a threat or acknowledge the severity of the problem—was extreme and outrageous.

145.     After the assault, Plaintiff sought safety and protection from Defendant, but was met instead with hostility and belittling remarks, implying that as a woman, she must tolerate male strangers masturbating in front of her on airplanes.

146.     Defendant's response to Plaintiff's report about John Doe's behavior demonstrates a complete disregard for Plaintiff's emotional well-being.

147.     Upon information and belief, Defendant knew or should have known that dismissing Plaintiff's sexual assault as normal behavior and prioritizing John Doe's comfort over Plaintiff's by neglecting to address the report created a significant risk of causing severe emotional distress to Plaintiff.

148.     Plaintiff suffered severe emotional distress as a result of the assault.

149.     Plaintiff suffered severe emotional distress as a result of Defendant's response to Plaintiff's report of the assault.

150.     Plaintiff suffered emotional distress as a result of the Flight Attendant's response to Plaintiff's report of the assault.

151.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages and is entitled to the recovery of damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

152.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph.

153.    A valid and binding Contract exists between Plaintiff and Defendant.

154.    Defendant had express and implied obligations under the contract to ensure the safety and comfort of its passengers, i.e. Plaintiff, which it failed to uphold.

155.    Plaintiff's discomfort and fear during the Flight, both during and after reporting the assault, deprived Plaintiff of the benefits of the Contract between her and Defendant.

156.    Defendant's employee's negligence in failing to properly monitor the cabin in which Plaintiff was seated and in its employee's response to Plaintiff's complaint about John Doe frustrated Plaintiff's purpose in entering the Contract, which was to have a safe flight to Milan.

157.    Defendant's employee's response to Plaintiff's complaint about John Doe's behavior frustrated Plaintiff's purpose in having the contract, which was to have a safe flight to Milan.

158.    Plaintiff suffered severe and ongoing emotional distress as a result of Defendant's response to Plaintiff's report of the assault.

159.    Upon information and belief, as a direct and proximate result of the above, Plaintiff has suffered damages and is entitled to the recovery of damages in an amount to be determined at trial, as well as reasonable attorneys' fees and costs.

## JURY TRIAL DEMANDED

Plaintiff hereby requests a trial by jury on all causes of action alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgement in her favor and against Defendants, containing the following relief:

i.    For general and special damages, according to proof;

ii.   For punitive and/or exemplary damages in an amount to punish Defendant to the extent allowed by law;

iii.  For attorneys' fees in prosecuting this action to the extent allowed by law;

iv.   For damages, including compensatory damages, relating to mental, emotional, and physical pain and suffering, emotional trauma and distress, impairment of relationships, impairment of life, impairment of mental abilities, lack of enjoyment of life, lost future earnings, and other damages that this Court deems just and proper;

v.    For pre-judgment interest to the extent allowed by law;

vi.   For post-judgment interest to the extent allowed by law;

vii.  For costs of suit incurred herein;

viii. For any other damages allowed by statute and/or law;

ix.   Any other and further relief as the Court deems necessary and proper.

//

//

Dated: March 21, 2025
     New York, New York       Respectfully submitted,

**ADELMAN MATZ P.C.**

By: _____
Madyson R. Nucci, Esq.
Sarah M. Matz, Esq.
1159 Second Ave, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
mnucci@adelmanmatz.com
sarah@adelmanmatz.com

*Attorneys for Plaintiff*